905 So.2d 655 (2004)
Zacharia Chase DAMBRELL, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2002-KA-01260-COA.
Court of Appeals of Mississippi.
May 25, 2004.
Rehearing Denied August 3, 2004.
*656 Phillip Broadhead, Columbia, Ross Parker Simons, Frank Hartley, attorneys for appellant.
Office of the Attorney General by Scott Stuart, attorney for appellee.
Before KING, C.J., THOMAS, MYERS, JJ.
KING, C.J., for the Court.
¶ 1. Zacharia Dambrell was convicted in the Circuit Court of Jackson County of attempted armed robbery. Aggrieved by his conviction Dambrell appeals and states the following issue:
I. Whether the circuit court erred in denying defendant's motion for a directed verdict, peremptory instruction, and judgment notwithstanding the verdict because the State did not sufficiently prove an overt act toward the commission of the crime of attempted armed robbery.
¶ 2. Finding that the State failed to prove each element of the indictment, this Court reverses and renders.

STATEMENT OF FACTS
¶ 3. On May 9, 2000 at about 2:00 p.m. Zach Dambrell and a few friends began smoking marijuana and ingesting drops of LSD. The young men continued taking the drugs until well past midnight, and in the early morning hours of May 10, after taking his second dose of LSD, seventeen-year-old Dambrell began talking with his friends about robbing the E-Z Serve convenience store located about a quarter of a mile away for money and cigarettes.
¶ 4. To facilitate the robbery, Dambrell's friends gave him a knife, a towel to cover it with, and a t-shirt to cover his face. Dambrell tied the t-shirt around his neck, put the knife in his belt, and went to the E-Z Serve. Upon arrival at the store *657 Dambrell hid behind a dumpster. After noticing suspicious activity by the dumpster, the store clerk walked outside, saw someone hiding behind the dumpster and went back in to call the police. After the clerk walked back inside, Dambrell pulled the t-shirt up to cover the lower half of his face, took the knife out of his belt and entered the store.
¶ 5. A video surveillance tape from the E-Z Serve store indicates that Dambrell entered the store with a t-shirt partially covering his face, and a knife in his right hand. After only a few steps inside the store, Dambrell stopped, saw the store clerk on the phone, and without saying a word to the clerk, cursed, slung the knife and towel to the floor and fled. The entire scenario lasted only a few seconds. After Dambrell fled, the store clerk walked over to retrieve the item Dambrell had thrown down, and for the first time saw the knife. Dambrell threw the t-shirt into the dumpster outside the store and walked back to his friend's house.
¶ 6. On November 7, 2000, Dambrell was indicted for attempted armed robbery pursuant to Mississippi Code Annotated Section 97-3-79.
¶ 7. Dambrell was convicted by a jury of attempted armed robbery and sentenced to six years in the custody of the Mississippi Department of Corrections. Aggrieved by the denial of his motion for a directed verdict and judgment notwithstanding the verdict, Dambrell has appealed.

ISSUE AND ANALYSIS
Whether the circuit court erred in denying defendant's motion for a directed verdict, peremptory instruction, and judgment notwithstanding the verdict because the State did not sufficiently prove an overt act toward the commission of the crime of attempted armed robbery.
¶ 8. This Court finds the indictment to be problematic and dispositive of the case, and will therefore not address the issue as stated by Dambrell.
¶ 9. Rule 7.06 of the Uniform Circuit and County Court Rules states:
The indictment upon which the defendant is to be tried shall be a plain, concise and definite written statement of the essential facts constituting the offense charged and shall fully notify the defendant of the nature and cause of the accusation. Formal and technical words are not necessary in an indictment, if the offense can be substantially described without them. An indictment shall also include the following:
1. The name of the accused;
2. The date on which the indictment was filed in court;
3. A statement that the prosecution is brought in the name and by the authority of the State of Mississippi;
4. The county and judicial district in which the indictment is brought;
5. The date and, if applicable, the time at which the offense was alleged to have been committed. Failure to state the correct date shall not render the indictment insufficient;
6. The signature of the foreman of the grand jury issuing it; and
7. The words "against the peace and dignity of the state."
UCCCR 7.06 (emphasis added).
¶ 10. The indictment against Dambrell read as follows:
Zach C. Dambrell in Jackson County, Mississippi, on or about May 10, 2000, did willfully, unlawfully and feloniously attempt to, steal and carry away from the person and/or the presence of, and against the will of Owen Waters, merchandise, the personal property of Owen *658 Waters of which he was in lawful possession by virtue of his employment with E-Z Serve, by putting the said Owen Waters in fear of immediate injury to his person, by the exhibition of a deadly weapon, to wit: a knife, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the State of Mississippi.
(emphasis added).
¶ 11. Beyond question, this indictment was "a plain, concise, and definite written statement of the essential facts constituting the offense charged." The State was required to prove each essential fact constituting the offense charged. Bullock v. State, 447 So.2d 1284, 1286 (Miss.1984). Those essential facts were: (1) that Dambrell attempted to take personal property from Owen Waters; (2) that Owen Waters had possession of the personal property by virtue of his employment with E Z Serve; and (3) that Dambrell exhibited a knife to Owen Waters, and by doing so, caused him to fear immediate injury to his person. The State's obligation was to prove each of the essential fact; not two out of three, but each essential fact. Id.
¶ 12. In his appeal Dambrell has argued that the State failed to prove each essential element of the charge. He specifically argues that the State failed to prove the exhibition of a knife. The trial court was troubled by this issue also. In an effort to satisfy that concern, the court questioned Owen Waters. The trial court's questions and the responses of Owen Waters were as follows:
THE COURT: I have a question. Mr. Waters, you indicated that when he [Zach] walked in he had the towel and 
MR. WATERS: The towel, he had the knife wrapped up in the towel, so I never did actually see the knife until after he slung it.
THE COURT: So he came in and he had the towel and 
MR. WATERS: Wrapped around the knife.
THE COURT: That's all?
MR. WATERS: Yes, sir.
THE COURT: Could you tell what it was?
MR. WATERS: Not at that point, no, sir. I didn't know until he slung it. That's when I knew he had a knife.
THE COURT: So when he slung it the towel and the knife went off in the same direction?
MR. WATERS: Yes, sir.
THE COURT: That's when you realized he had a weapon?
MR. WATERS: Yes, sir.
¶ 13. In discussing Dambrell's motion for a directed verdict, the trial judge noted that the weapon was not exhibited because Waters never saw the weapon until Dambrell had disposed of it.
¶ 14. The State chose to track the language of Mississippi Code Annotated Section 97-3-79 in its indictment. By doing so, the State obligated itself to prove that Dambrell exhibited a deadly weapon to Waters, and that as a result of that exhibition, Waters was placed in fear of immediate injury to his person. The State was obligated to establish that any fear of Waters flowed directly from, and was occasioned by his awareness of the existence of the weapon. Mere assumption that a deadly weapon exists is not enough, the victim must have definitive knowledge that such deadly weapon does in fact exist to support a conviction under a standard of reasonable doubt. Gibby v. State, 744 So.2d 244, 245(¶ 8) (Miss.1999).
*659 ¶ 15. Where the State has failed to establish that a weapon was exhibited, then of necessity it has also failed to establish that the victim was placed in fear of immediate injury to his person by the exhibition of a weapon. Our review of the record leads to the unavoidable conclusion that it does not contain proof of every essential fact alleged in the indictment. Therefore, it contains insufficient evidence upon which a reasonable person might have found Dambrell guilty pursuant to the indictment against him. Where the State has failed to prove each and every essential element of the indictment as drafted we are compelled to reverse and render the conviction.
Lee v. State, 756 So.2d 744, 748 (¶ 11) (Miss.1999). The State failed to prove that Waters was placed in immediate fear by exhibition of a deadly weapon, accordingly this Court reverses and renders Dambrell's conviction.
¶ 16. THE JUDGMENT OF THE CIRCUIT COURT OF JACKSON COUNTY IS HEREBY REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE TAXED TO JACKSON COUNTY.
BRIDGES, P.J., THOMAS, LEE, MYERS, AND CHANDLER, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY. GRIFFIS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SOUTHWICK, P.J.
GRIFFIS, J., dissenting.
¶ 17. I believe that there was sufficient evidence to support the jury's verdict. Therefore, I respectfully dissent.
¶ 18. The majority quotes a portion of Owen Waters' testimony. Thereafter, the court allowed the following redirect and re-cross examination:
Prosecutor: Mr. Waters, when the Defendant walked, this is in response to the Judge's question, the Defendant walked in with a towel, was the knife wrapped up in the towel like this?
Mr. Waters: Yes, sir. It was all wrapped up where you couldn't see it.
Prosecutor: Okay. What did you  what went through your mind when you saw this?
Mr. Waters: I assumed he had a weapon in his hand is what I assumed.
Prosecutor: Okay. So did the fact that it was wrapped in a towel as opposed to being out like this, did that change your fear factor?
Mr. Waters: No, uh uh (indicating negative).
Prosecutor: So you were just as afraid?
Mr. Waters: Well I knew he had a weapon, that's what, that's what 
Prosecutor: That meant weapon to you, did it not?
Mr. Waters: Yes, sir.
Defense Attorney: Okay. He comes in the door with this towel wrapped around his hand and 
Mr. Waters: No, he, he had the towel  his hand
Defense Attorney: Something, the towel was out of his hand and it appeared that he had something in the towel?
Mr. Waters: Right.
Defense Attorney: And you assumed it was a weapon?
Mr. Waters: Yes, sir.
Defense Attorney: But you couldn't tell what it was?
Mr. Waters: No, sir.
¶ 19. Dambrell questions the sufficiency of the evidence. We must, therefore, consider all of the evidence in the light most favorable to the verdict. Wetz v. State, 503 So.2d 803, 808 (Miss.1987). This *660 Court may reverse only when reasonable jurors could not have found one of the elements of the offense. Id.
¶ 20. The majority cites Gibby v. State, 744 So.2d 244, 245 (¶ 8) (Miss.1999), for the proposition that the "assumption that a deadly weapon exists is not enough, the victim must have definitive knowledge that such deadly weapon does in fact exist to support a conviction under a standard of reasonable doubt." Both the Mississippi Supreme Court and this Court have retreated from the requirement of "definitive knowledge."
¶ 21. In Brown v. State, 859 So.2d 1039, 1041 (¶ 10) (Miss.Ct.App.2003), we considered and affirmed an armed robbery conviction in a similar case. When Gates, the cashier, was told to open the cash register, she testified that she "felt a sharp object at her side." Gates testified that she never got a "good look at the object during the course of the robbery," but she subsequently identified it as a "tool-like object." Id. at (¶ 10). Judge Irving identified the error assigned"The crux of Brown's argument is that Gates could not determine what type of weapon was used in the robbery. He emphasizes that Gates described the weapon as a sharp object but testified that she did not get a good look at the weapon. Moreover, he contends that because Gates could not see the weapon the armed robbery conviction should be reversed." Id.
¶ 22. Our opinion considered and distinguished Gibby, with the following discussion:
In Gibby, the defendant "poked something hard through his jacket pocket into the victim's ribs." The victim did not see the hard object but assumed it was a gun. A divided Mississippi Supreme Court, finding that the evidence was insufficient to support the defendant's conviction of armed robbery, reversed and remanded for sentencing on the lesser offense of simple robbery.... We find ... Gibby ... distinguishable from our case. Here, Gates not only felt the weapon at her side but she also saw the weapon. Later, after Brown was arrested, she was able to identify the tool-like object as the weapon used in the robbery. Moreover, Brown was apprehended with the weapon still on his person.
While the facts here are strikingly similar to those in Gibby, one significant difference exists. In Gibby, the robbery victim never saw the object. Therefore, there was an absence of the element requiring the exhibition of a deadly weapon. [The ... victim in Gibby ... [n]ever saw a weapon or the outline of a weapon. Here, as we have already noted, Gates was able to see the sharp instrument before the robbery was completed. Consequently, we find that the exhibition element of the crime was sufficiently proven.
Id. at (¶¶ 12, 14 and 15) (citations omitted).
¶ 23. More recently, the supreme court held "[w]hile we do not propose to give absolute meaning or strict definition to the phrase `by the exhibition of a deadly weapon,' it is clear that it means something more than mere possession." Clark v. State, 756 So.2d 730, 732 (¶ 11) (Miss.1999). Clark robbed a convenience store. Id. at 731 (¶ 5). The cashier became suspicious of Clark when he repeatedly looked at the cash register while the cashier was helping other customers. The cashier also thought Clark to be suspicious by waiting for other customers to leave. While Clark was searching for money to make a purchase, the cashier noticed the handle of a kitchen knife. The cashier asked another customer to not leave and relayed his fear of being robbed to another customer. Id. Clark returned to the counter later to *661 make a second purchase. Clark then reached into and removed money from the cash register. Id.
¶ 24. The court reversed and remanded Clark's conviction of armed robbery. Id. at 733 (¶ 15). The court concluded that "[t]here is simply no proof that Clark used the purported knife in any manner whatsoever during the commission of the offense. He did not threaten [the cashier] verbally or physically with the knife. More importantly, giving all inferences to the testimony of [the cashier] that he indeed saw a knife, it was not the means by which Clark took the cash." Id. at 732-33 (¶ 5).
¶ 25. I find the facts here more similar to Brown than Gibby. Mr. Waters' testimony established that he saw Dambrell with his face covered and with a towel covering an object in his hand. Just as in Brown, Mr. Waters was able to: (a) recognize that Dambrell entered the store carrying a deadly weapon, (b) describe the deadly weapon Dambrell used, and (c) retrieved the weapon after Dambrell abandoned his criminal effort. Further, consistent with the supreme court's conclusion in Clark that there is no "absolute meaning or strict definition to the phrase `by the exhibition of a deadly weapon,'" I am of the opinion that there was sufficient evidence to support the jury's verdict and the conviction of Dambrell.
¶ 26. For these reasons, I respectfully dissent.
SOUTHWICK, P.J., JOINS THIS SEPARATE OPINION.