IRVING, J.,
for the Court.
¶ 1. Vincent Joe Yucaitis was convicted of armed robbery and sentenced to serve twenty years in the custody of the Mississippi Department of Corrections without the possibility of parole. He has appealed and argues that the State failed to prove that property taken during the robbery was procured through the exhibition of a deadly weapon and that the trial court erred in granting a certain jury instruction. Yucaitis also contends that the jury’s verdict is against the sufficiency and weight of the evidence.
¶ 2. We find no reversible error, therefore, we affirm Yucaitis’s conviction and sentence.
FACTS
¶ 3. On the morning of December 3, 2001, a masked man entered the Save Rite Pharmacy in Ocean Springs, Mississippi, and ordered the store’s owner and pharmacist, Jimmy Carter, to give him prescription drugs from behind the counter.[1] At the time of the crime, Carter and Lisa Worthington, Carter’s pharmacy technician, were the only people present in the store. At trial, Carter gave the following undisputed account of events that transpired during the robbery:
And I looked up and I saw a man coming, he had gotten almost to the end of the aisle, almost to the prescription counter, with a stocking mask on. And I just looked up, and I was kind of in shock, you know. I didn’t know what was really going on. And he, uh, he threw me a pillowcase and said, “Put your oxyeontin in the pillowcase.” And he came right on around to the end of the counter, through the door, and right back in. And, I, just — you know, I hadn’t done anything at the time. He had his arm behind him. I didn’t know what he had in his hand. So, I did what he said. The oxyeontin cabinet was below counter level. I kneeled down on the floor, opened the counter, and started putting the oxyeontin and whatever else into the bag. I stood up. The man *168 was standing just maybe two feet away. I handed him the bag. He then took his hand from behind his back; he had a knife with a blade about this long. He held the phone cord, cut the phone cord, turned around, and walked out.
Carter testified that he observed the assailant drive away in a silver-gray Cadillac.
¶ 4. Approximately one month later, Yu-caitis contacted the pharmacy to get a printout of his medication list. Carter testified that when Yucaitis returned to the store to pick up the list, he recognized Yucaitis at that time as the man who had robbed him a month earlier. Carter further testified that he recognized Yucaitis’s vehicle as that driven by the assailant on the day of the robbery. Carter provided law enforcement with the car’s tag number.[2] Yucaitis was subsequently identified by Carter and Worthington from a photographic lineup.
ANALYSIS AND DISCUSSION OF THE ISSUES

(1) Exhibition of Deadly Weapon

¶ 5. Yucaitis first argues that the evidence is insufficient to support his armed robbery conviction. He specifically contends that the State failed to prove that the property taken during the robbery was procured through the exhibition of a deadly weapon.[3]
¶ 6. Mississippi Code Annotated section 97-3-79 (Rev.2000), Mississippi’s armed robbery statute, provides in part:
Every person who shall feloniously take or attempt to take from the person or from the presence the personal property of another and against his will by violence to his person or by putting such person in fear of immediate injury to his person by the exhibition of a deadly weapon shall be guilty of robbery[.]
¶ 7. In support of his argument that the State was obligated to prove that he exhibited a deadly weapon, Yucaitis cites Clark v. State, 756 So.2d 730, 731(¶7) (Miss.1999); Gibby v. State, 744 So.2d 244 (Miss.1999); Dambrell v. State, 905 So.2d 655 (Miss.Ct.App.2004) and Blue v. State, 827 So.2d 721, 724 (Miss.Ct.App.2002).[4]
¶ 8. In Dambrell, the defendant was convicted of attempted armed robbery. On appeal, we reversed and rendered his conviction on the grounds that the State failed to prove that he had exhibited a deadly weapon which resulted in the victim being placed in fear of immediate injury. In response to our ruling, the State petitioned the Mississippi Supreme Court for a writ of certiorari. Certiorari was granted, and the supreme court, overruling Gibby, held “that when a defendant makes an overt act and a reasonable person would believe that a deadly weapon is present, there is no requirement that a victim must actually see the deadly weapon in order to convict pursuant to Mississippi Code Annotated § 97-3-79 (Rev.2000).” Dambrell, 903 So.2d at 683(¶ 6). The Dambrell court noted that a strict interpretation of the armed robbery statute requiring that the victim see the actual weapon would give *169 license to future armed robbers to simply cover their weapon in order to avoid a conviction. Id. at 689(¶ 33).
¶ 9. Here, under the reasoning set forth in Dambrell, we find that the State’s evidence is sufficient to support Yucaitis’s armed robbery conviction. The record clearly reflects that Yucaitis was in possession of a knife upon entering the store. Although Carter’s testimony indicates that he did not actually see the knife until after he gave Yucaitis the prescription drugs, Carter nevertheless testified that he assumed that Yucaitis had a weapon and feared for his life. On direct examination, Carter testified that “when I bent over, I didn’t know if I was going to ever get up or not. You know I felt like he- — I thought he had a weapon, I didn’t know what he had. You know, I was really afraid for my life. I mean, I just — it could have been the end of it.” Based on Dambrell, we find that Yucaitis’s argument, that the State failed to prove a critical element of the offense, is without merit.

(2) Instruction S-l

¶ 10. Yucaitis next argues that the trial court erred in granting jury instruction S-l. He claims that the trial court, in granting the instruction, removed from the jury’s province the determination of whether a knife was used during the commission of the crime, thus making the instruction peremptory in nature. Yucaitis also contends that the instruction conflicted with other instructions given by the court.
¶ 11. Instruction S-l instructed the jury as follows:
It is a question of fact for the jury to determine whether the knife used in this case was a deadly weapon in the manner claimed to have been used in this case. A deadly weapon may be defined as any object, article, or means which, when used as a weapon is, under the existing circumstances, reasonably capable or likely to produce death or serious bodily harm to a human being upon whom the object, article or means is used as a weapon.
The record reflects that Yucaitis made the following objection to the instruction:
BY MR. SMITH: I object to it on the basis of the motion I made a few minutes ago. Basically, I don’t believe a deadly weapon was used to commit a robbery, an armed robbery. So, on that basis, it’s improper to submit it to the jury, because the fruit of the crime, if you will, had been delivered to the robber prior to any victim having seen a weapon. So, for that reason, I don’t think it’s proper to even submit this instruction to the jury.
BY THE COURT: S-l will be given. I believe that’s a jury question, and you can certainly argue that theory to the jury, but I believe it’s appropriate for them to be instructed on it.
¶ 12. The State maintains that Yucaitis objected to instruction S-l on a different basis at trial than he now does on appeal, and as a result, his argument is procedurally barred. The State, however, alternatively contends that the trial judge did not err in granting instruction S-l because the evidence clearly demonstrated that a knife was used during the robbery. Yucaitis, argues that a proper objection was made to the instruction, but nevertheless urges this Court to consider his argument under the doctrine of plain error in the event we determine that the issue was not properly preserved for appellant review.
¶ 13. “This Court has repeatedly held that a party who fails to make a contemporaneous objection at trial must rely on plain error to raise the issue on appeal, because it is otherwise procedural *170 ly barred.” Williams v. State, 794 So.2d 181, 187(¶ 23) (Miss.2001) (citing Foster v. State, 639 So.2d 1263, 1288-89 (Miss.1994)). “The plain error doctrine requires that there be an error and that the error must have resulted in a manifest miscarriage of justice.” Williams, 794 So.2d at 187(¶ 23) (citing Gray v. State, 549 So.2d 1316, 1321 (Miss.1989)). “Further, this Court applies the plain error rule only when it affects a defendant’s substantive/fundamental rights.” Williams, 794 So.2d at 187(¶ 23) (citing Grubb v. State, 584 So.2d 786, 789 (Miss.1991)).
¶ 14. We have thoroughly reviewed the record and find that the State is correct that Yucaitis never objected to instruction S-l on the basis that he now argues on appeal. As can be observed from the previously quoted passages, Yucaitis objected to the instruction on the grounds that he did not think that a deadly weapon was used to commit the robbery. Therefore we find that his argument on appeal is procedurally barred. However, procedural bar aside, the record clearly reflects that S-l was warranted by the evidence. During trial, the State presented uncontra-dicted proof that Yucaitis used a knife during the commission of the crime. Similarly, a review of the instructions as a whole fails to support Yucaitis’s contention that instruction S-l conflicted with other instructions given by the court. Further, when read together, the instructions set forth an adequate statement of the law. Accordingly, we fail to find an infringement upon Yucaitis’s fundamental rights that would warrant considering his appellate argument on this issue under the plain error doctrine.

(3) Sufficiency and Weight of Evidence

¶ 15. In his final assignment of error, Yucaitis challenges the sufficiency and weight of the evidence. He contends that the trial court erred in denying his motions for a directed verdict, peremptory instruction, and a JNOV. Yucaitis also contends that the trial judge erred in denying his request for a new trial.
¶ 16. We first address Yucaitis’s argument that the verdict was against the sufficiency of the evidence. When the sufficiency of evidence is challenged, the evidence is viewed and tested in a light most favorable to the State. McClain v. State, 625 So.2d 774, 778 (Miss.1993) (citing Esparaza v. State, 595 So.2d 418, 426 (Miss.1992)). This Court is authorized to reverse only where, with respect to one or more of the elements of the offense charged, the evidence so. considered is such that reasonable and fair-minded jurors could only find the accused not guilty. Id.
¶ 17. As stated earlier in this opinion, we find that ample evidence was offered by the State in support of Yucaitis’s conviction. The evidence presented at trial clearly showed that Yucaitis was in possession of a weapon, namely a knife, when he entered the Save Rite Pharmacy and that, under the holding in Dambrell, he used the knife to illegally procure property from the store. Further, the State presented the eyewitness testimony of Carter and Wor-thington who positively identified Yucaitis as the person who robbed them at knife-point. Thus, accepting the evidence in a light most favorable to the State, the jury was justified in finding Yucaitis guilty of armed robbery.
¶ 18. We next address Yucaitis’s argument that the trial court erred in denying his motion for a new trial. Yucaitis’s motion for a new trial implicated the weight of the evidence. Our standard of review for claims that a conviction is against the overwhelming weight of the evidence or that the trial court erred in not granting a motion for a new trial has been stated as follows:
*171 [This Court] must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial. A new trial will not be ordered unless the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.
Todd v. State, 806 So.2d 1086, 1090(¶ 11) (Miss.2001) (quoting Crawford v. State, 754 So.2d 1211, 1222(¶ 30) (Miss.2000)).
¶ 19. The facts and the permissible inferences to be drawn from them strongly point toward Yucaitis’s guilt. Considering the evidence presented by the State in support of Yucaitis’s conviction, and its substantial weight against him, we are not convinced that the jury’s verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice. Consequently, we find the trial court did not abuse its discretion in denying Yucaitis’s motion for a new trial. This issue is without merit.
¶ 20. THE JUDGMENT OF THE CIRCUIT COURT OF JACKSON COUNTY OF CONVICTION OF ARMED ROBBERY AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT THE POSSIBILITY OF PAROLE, AND PAYMENT OF A $5,000 FINE, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO JACKSON COUNTY.
KING, C.J., BRIDGES AND LEE, P.JJ., MYERS, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.

. The assailant, who was later identified as Yucaitis, was one of the store's regular customers.

. The car was registered to Cynthia Yucaitis, the Appellant's wife.

. Although Yucaitis challenges the sufficiency and weight of the evidence in both his first and last issues, our analysis of the first issue is restricted to a discussion of the sufficiency of the State's proof on Yucaitis's exhibition of a weapon.

.At the time of the filing of Yucaitis's appeal, a motion for writ of certiorari on Dambrell was pending before the Mississippi Supreme Court. The Mississippi Supreme Court has since granted certiorari and reversed our holding. Dambrell v. State, 903 So.2d 681 (Miss.2005).